[No. 3267. Decided June 24, 1899.]

HARRY A. STEELE, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*

RAILROADS—NEGLIGENCE—SWITCHING CARS ACROSS PUBLIC STREET.

It is negligence on the part of a railroad company to switch cars in a public and well traveled thoroughfare, unattended, except by a brakeman at the rear end of the cars, who could not see the track in front because of the obstruction afforded by the loaded cars.

SAME—INJURY TO MINOR—CONTRIBUTORY NEGLIGENCE.

An attempt of a fourteen year old boy to cross a railroad track at a street crossing at which his view was unobstructed is not, as a matter of law, such contributory negligence as will preclude a recovery for injuries sustained by being struck by detached cars approaching the crossing without warning or signal, while stepping back to avoid an engine approaching on another track, which was in front of the cars when first seen by him.

CONTRIBUTORY NEGLIGENCE—WANT OF VIGILANCE—WHEN RESULT OF DEFENDANT'S NEGLIGENCE.

One will not be allowed to impute a want of vigilance to another injured by his act, if that very want of vigilance was the consequence of an omission of duty on his own part.

ACTION FOR PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—MATTER OF DEFENSE.

Contributory negligence being a matter of defense, it will be presumed that the plaintiff in an action for personal injuries was observing due care, until the presumption is overthrown by a preponderance of testimony on the defendant's part.

Appeal from Superior Court, Yakima County.—Hon. JOHN B. DAVIDSON, Judge.    Affirmed.

*Crowley & Grosscup* and *Whitson & Parker,* for appellant:

As a matter of law, plaintiff was guilty of contributory negligence, which would prevent any recovery on his part. The duty of a person approaching a railroad crossing to

stop, look and listen has been settled beyond controversy. A failure to do so, except under exceptional circumstances, is negligence *per se,* and prevents a recovery, even though the operatives of a train are guilty of negligence in failing to give signals, or in running too fast.   Beach, Contributory Negligence (2d ed.), §§ 180, 181; *Lewis v. Puget Sound Shore R. R. Co.,* 4 Wash. 188; *Chicago, R. I. & P. R. R. Co. v. Houston,* 95 U. S. 701 (24 L. ed. 542); *Blackburn v. Southern Pacific Co.,* 55 Pac. 225; Pierce, Railroads, p. 343; *Moore v. Keokuk & W. R. R. Co.,* 56 N. W. 430; *Reeves v. Dubuque & S. C. R. R. Co.,* 60 N. W. 243.   See, also, upon this question, *Schofield v. Chicago, M. & St. P. Ry. Co.,* 114 U. S. 615 (29 L. ed. 224); *Philadelphia, etc., R. R. Co. v. Peebles,* 67 Fed. 591; *Cincinnati, H. & I. Ry. Co. v. Duncan,* 42 N. E. 37; *Hayden v. Missouri, K. & T. Ry. Co.,* 28 S. W. 74; *Nelson v. Duluth, S. S. & A. Ry. Co.,* 60 N. W. 703; *Myers v. Baltimore & O. R. R. Co.,* 24 Atl. 747.

A number of cases may be found and cited, where the question of negligence and contributory negligence has been submitted to a jury, but they are all cases where the circumstances were unusual and the party claiming to be injured was so situated that he could not see up and down the track, by reason of obstructions, or on account of storm, or for some other cause.   No case can be found where a party is excused who, having an opportunity to get a clear view up and down the track, attempts to cross in front of a train without looking and listening, and particularly is it true that in no case has a recovery ever been permitted where a party has had an opportunity to see a train, and then attempts to cross in front of it.   The reason for this rule is very strongly stated in the case of *Pennsylvania R. R. Co. v. Beale,* 73 Pa. St. 504 (13 Am. Rep. 753).   See, also, *Atchison, T. & S. F. R. R. Co. v. Holland,* 56 Pac. 6; *Lofdahl v. Minneapolis, etc., Ry. Co.,* 60 N. W. 795;

*Delaney v. Milwaukee & St. P. Ry. Co.,* 33 Wis. 67;
*Buckley v. Flint & P. M. R. R. Co.,* 78 N. W. 655.

While it is true that the question of contributory negligence is an affirmative defense, yet where the facts are developed by the plaintiff himself which show contributory negligence, the defendant is entitled to avail itself of such facts. *Moberly v. Kansas City, etc., Ry. Co.,* 11 S. W. 569; *Schepers v. Union Depot R. R. Co.,* 126 Mo. 665; *Pennsylvania R. R. Co. v. Mooney,* 17 Atl. 590.

*Graves & Englehart,* for respondent:

This court has disapproved the practice of railroads sending cars unattended by an engine, and with no lookout, over traveled crossings in cities, and designated it as negligence. *Roth v. Union Depot Co.,* 13 Wash. 525 (31 L. R. A. 855). See, also, *Brown v. New York Central R. R.,* 32 N. Y. 597 (88 Am. Dec. 353); *Swift v. Staten Island Rapid Transit Co.,* 45 Am. & Eng. R. R. Cas. 180; *Townley v. Chicago, M. & St. P. R. R. Co.,* 4 Am. & Eng. R. R. Cas. 562; *Cooper v. Lake Shore & M. S. Ry. Co.,* 66 Mich. 261 (11 Am. St. Rep. 482).

This is not a case involving the doctrine of stop, look and listen; the point is, when the boy Steele stopped, looked and listened, did he exercise that degree of care and caution which a prudent person would have exercised under like circumstances in crossing the track at this point? He was not compelled to anticipate a negligent or wrongful act of the appellant; he had a right to presume the appellant would handle its trains in a prudent and careful manner; he looked and only attempted to cross the track when all was apparently clear and safe. He was also looking out for the engine and cars to come down past him, on the side track which he was to cross next. Contributory negligence will not be imputed, as a matter of law, to a person injured by a railway train merely be-

cause it was possible for him to have discovered its approach. *Parsons v. New York Central, etc., R. R. Co.,* 113 N. Y. 355 (3 L. R. A. 683, 10 Am. St. Rep. 450); *Atchison, T. & S. F. R. R. Co. v. Hague,* 54 Kan. 284 (45 Am. St. Rep. 278).

The only remaining question is, did he, under the circumstances, use proper care in crossing the track after looking? This is a question that was properly submitted to the jury. "If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts." *Mynning v. Detroit L. & N. R. R. Co.,* 64 Mich. 93 (8 Am. St. Rep. 804); *Baltimore & O. R. R. Co. v. Kane,* 69 Md. 11 (9 Am. St. Rep. 387); *McQuillan v. Seattle,* 10 Wash. 465 (45 Am. St. Rep. 799).

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought in the superior court of the state of Washington, in and for the county of Yakima, by H. A. Steele, a minor, by Mrs. O. O. Steele, his guardian *ad litem,* as plaintiff, against the Northern Pacific Railway Company, as defendant. The complaint alleges that H. A. Steele was walking along the public streets of the city of North Yakima, across the railway track of the defendant, to a coal yard, and that, as he was crossing the track, the defendant carelessly and negligently caused several cars coupled together to pass rapidly over said railway track at or near the crossing, and omitted to give any signal, by ringing a bell or sounding a whistle, or in any other way warning said Steele of the approach of the detached cars, and that he was not aware that said cars were approaching the crossing upon which he was walking; that in consequence of such negligence and carelessness on the part of the defendant, the cars struck Steele, knocking him down and injuring him in the manner specifically described by the complaint. The answer

denies the allegations of the complaint in reference to the negligent acts on the part of the railroad company, and affirms contributory negligence on the part of Steele. It alleges that, while he was attempting to get on the cars, he went upon the track of the defendant without its prior knowledge, and without looking to see whether cars were running on said track or not, although, by looking, he could easily have seen the approaching cars on the track in time to have escaped being struck by them, and that while so on the track, and attempting to get on said cars, he was thrown down and injured to some extent; that Steele had been warned by the defendant company to keep away from said cars, and that the accident was occasioned solely by his contributory carelessness and negligence in attempting to get upon said track without looking to see whether a train or cars were approaching, and for the purpose of getting unlawfully upon said cars, and riding thereon, without the consent or knowledge of the defendant. The reply put in issue the affirmative allegations of the answer. A verdict was rendered in favor of the plaintiff in the sum of $1,340.

The assignments of error are: First, that the court erred in refusing to instruct the jury to find a verdict for the defendant, for the reason that the plaintiff affirmatively showed by his own testimony that he was guilty of contributory negligence, and failed to show any negligence on the part of the defendant; second, error in the giving of certain instructions, which will be noticed hereafter.

The testimony in relation to the attempt by the boy Steele to steal rides upon the cars is contradictory, and, if essential, that question has been settled by the jury. So that we view the case from the standpoint of the statement of the appellant in its brief, which, after mentioning the

fact that the respondent, with other boys, was playing marbles upon the track, is as follows:

"Afterwards he and a lad named Johnny McCutcheon started across the track to go to the coal yard. This was about dinner time. At the place where they attempted to cross there was a clear view up and down the track for a long distance. To the south of the crossing, at a distance of about 100 feet, at this time stood a freight train. The railroad men had been switching in the yards, and just about this time five or six cars were dropped down the main track, the engine going off on a side track. The switch where the engine parted from the cars was about 100 feet from the place where plaintiff attempted to cross. The cars were loaded with rock, and came down the main track at a rate of from two to four miles per hour. The engineer and fireman were on the engine, which went down the side track, and there were two brakemen on the cars coming down the main track, one being at the rear end of the first car, in charge of the brake, and the other further back on the train. These cars and the engine were in plain sight from the place where the plaintiff attempted to cross. There was no obstruction in the way. The plaintiff stopped on the track for some reason, and was struck by the cars coming down, knocked down, the cars passing over him."

The testimony shows that the company was engaged, through its operators, in what is termed in railroad parlance "switching the freight cars." In this case the boy saw the train coming about 75 or 100 feet from him, but, as the train approached, the engine came down the side track, and the detached cars came down the main track, and, while the testimony shows that the detached cars had brakemen on them, it also shows that the brakemen were at the rear end of the cars, and that they could not see the track in front of them, because of its being obstructed by the load in front, and hence they afforded no protection to passers-by, so far as any lookout is concerned. It is earnestly contended by the appellant that

the company was not guilty of contributory negligence in thus sending its cars, detached, down this track and across the crossing. We do not think this contention can be sustained. The great weight of authority is to the effect that it is negligence on the part of a railroad company to switch cars, unattended, down tracks in a populous city, where many people are crossing the tracks over which the detached cars are switched.

" It is at all times and in all places an operation attended with more or less danger. . . . The making of a running switch in the crossing of a street of a populous town or village, where there is constant travel, and more especially where there are obstacles cutting off the view of approaching trains, is holden to be an act of gross negligence, for which a railroad company will be held responsible, if those receiving injury thereby are themselves observing due care at the time, and in no manner, by their own act or omission, contribute to the injury. And it is gross negligence for a brakeman to be absent from his post on the car at the time of making such a switch, or, if present, the negligence is equally great if he fails to obey the proper signals given for the government of his conduct." Rorer, Railroads, p. 491.

In this case, as we have before said, the brakemen were in a position where they could not observe the track, and no signal or notice of any kind was given.

" Permitting cars to run over a crossing, after being detached from a train which had previously passed, whereby a traveler is injured,—a fruitful source of mischief,—has been condemned as negligence." 1 Thompson, Negligence, 423.

In fact, this question was passed upon squarely by this court in the case of *Roth v. Union Depot Co.,* 13 Wash. 525 (43 Pac. 641), and there are many features in that case which are identical with some of the prominent circumstances of this case. The testimony in this case shows that the crossing was a public thoroughfare; that about

one-third of the people in North Yakima live on the west side of the track, and about two-thirds on the east side of the track; that the business portion of the town is principally upon the east side, and that the people on the west side cross the track in going to and returning from the business portion of the town; that one of the principal school houses is on the west side of the track, and that the path or track across which this switching was done is daily crossed by school children and other citizens of the town; that some business houses, such as lumber yards and coal yards, are situated on the west side, right opposite this track. In fact, the boy in this case had been sent by his mother, living on the east side, on an errand to obtain some coal from a coal yard on the west side, at the time this accident happened. So we think that we need not discuss further the question of negligence on the part of the company in sending their cars down, substantially unattended, across this well-traveled road.

A closer question, however, is whether or not the boy in this case was guilty of contributory negligence to such an extent that the court would have been justified in taking the case from the jury, and holding that, as a matter of law, his acts constituted contributory negligence, and that no recovery could be had. It is insisted by the appellant that this case falls within the rule laid down by this court in *Oregon Ry. & Nav. Co. v. Egley,* 2 Wash. 409 (26 Pac. 973, 26 Am. St. Rep. 860). But in that case the plaintiff was a naked trespasser, attempting to board the train of the defendant, and unknown to the servants of the company, and was hurt while engaged in such unlawful business. We do not think that the principles involved in that case bear upon the case in point in any degree. It must be admitted that the authorities are not uniform, so far as the question of contributory negligence is concerned, but the great weight of authority is to the effect that,

before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them, and this distinction must not be lost sight of between the case at bar and many of the cases cited by the appellant, where the plaintiff had failed to look and listen as he approached a railroad track; many of the courts holding that the railroad track itself is a warning sufficient to put the traveler upon his guard, and make it his legal duty to look and listen. Such was the case of *Chicago, R. I. & P. R. R. Co. v. Houston,* 95 U. S. 697, where it was decided by the supreme court of the United States that the neglect of the engineer of a locomotive of a railroad train to sound its whistle or ring its bell on nearing a street crossing does not relieve a traveler on the street from the necessity of taking ordinary precautions for his safety.

" Before attempting to cross the railroad track, he is bound to use his senses,—to listen and to look,—in order to avoid any possible accident from an approaching train. If he omits to use them, and walks thoughtlessly upon the track, or if, using them, he sees the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives any injury, he so far contributes to it as to deprive him of any right to complain,"

on the theory that,

"if one chooses in such a position to take such a risk, he must suffer the consequences."

In *Myers v. Baltimore & O. R. R. Co.,* 150 Pa. St. 386 (24 Atl. 747), cited by the appellant, the court says:

" The fact that four or five seconds after he says he looked and listened he was struck by the train that must have been plainly visible, and almost on him, at the time he alleges he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did

stop, look both ways, and listen, before driving upon the crossing, that it is trifling with justice to permit a jury to find that it is true. Such a finding is absurd. It is simply and flatly impossible that one can stop, look and listen for an approaching train that is in plain view and close at hand, and be unable to see or hear it, if he possesses the senses of sight and hearing. It seems, therefore, necessary to advance one step in the application of the doctrine of legal presumption, and to lay it down as a rule that one who is struck by a moving train, which was plainly visible from the point he occupied when it became his duty to stop, look, and listen, must be conclusively presumed to have disregarded that rule of law and common prudence, and to have gone negligently into an obvious danger."

Such, also, is the state of facts upon which a great majority of the cases relied upon by the appellant are decided. But the circumstances of this case are entirely different. Young Steele, according to his own testimony, —and it is upon his own testimony that this case must be decided, the jury having passed upon the weight of the testimony,—was not approaching the track where a single train was approaching in a legal and rightful manner, and where it would have been his duty to have looked and listened, but he was confused by the unlawful and culpable negligence of the defendant in sending the engine down one track, and the detached cars down another track, without warning, so close to him that, in attempting to avoid the engine which was in sight before the cars were detached, he became entangled with the detached cars. It was natural for him, under the circumstances, to have his mind concentrated upon the engine. His testimony is to the effect that when he saw the engine the cars were behind it, and he had no notice of any kind that the other cars were upon him when he stepped back to avoid the collision with the engine,—an altogether different proposition from the ones discussed by the courts in the cases we have just noticed. The circumstances are sufficiently different, at

least, to raise an honest difference of opinion in the minds of men as to whether he was guilty of contributory negligence in not taking notice of the different cars coming down the different tracks. In this respect this case is something like that of *Roth v. Union Depot Co.,* above mentioned. There this court said:

" By reason of the close proximity of these cars, he became confused, and in attempting to escape from one was run down by the other."

In *Atchison, T. & S. F. R. R. Co. v. Hague,* 54 Kan. 284 (38 Pac. 257, 45 Am. St. Rep. 278), it was held that, while ordinarily it is not the duty of a traveler on approaching a railroad track to stop, there may be cases where, by reason of obstructions or noises in the vicinity, he would be required to stop and listen before crossing the track, and in that case it is said:

" Whether the surroundings of this crossing, and the circumstances and conditions which existed at the time of the accident, required Hague to stop, was a proper matter for the consideration of the jury. Under the testimony in the case, it cannot be said, as a matter of law, that the failure to stop was negligence *per se;* and hence it cannot arbitrarily be said that plaintiff is not entitled to recover."

In *Railroad Co. v. Stout,* 17 Wall. 657, in discussing the question of a legal bar to an action by reason of contributory negligence, the court said:

" It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts comes in question rather than where deductions or inferences are to be made from the facts.  .  .  .  In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this

action, it may be ruled, as a matter of law, that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So, if a coach driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law."

The court then proceeded to give extreme examples on the other side, where there can be no question of contributory negligence, and continues:

" But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge,"—

citing 2 Redfield, Railways, p. 231, where that author says:

"And what is proper care will often be a question of law, where there is no controversy about the facts. But

ordinarily, we apprehend, where there is any testimony tending to show negligence, it is a question for the jury."

In *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408 (12 Sup. Ct. 679), the rule was laid down that, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence, the determination of the matter is for the jury. The lower court in that case gave the following instruction:

"You fix the standard for reasonable, prudent, and cautious men under the circumstances of the case as you find them, according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved, and try it by that standard; and neither the judge who tries the case, nor any other person, can supply you with the criterion of judgment by any opinion he may have on that subject."

This instruction was indorsed by the appellate court in the following language:

"But it seems to us that the instruction was correct, as an abstract principle of law, and was also applicable to the facts brought out at the trial of the case. There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men

may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court,"—citing many cases.

The facts in that case were that, while the plaintiff, who was an old man, was driving towards the railroad crossing, and looking at a train that had just crossed the road from one direction, and while the noise caused by it was still quite distinct, he drove on towards his destination, and just as he had reached the track, and while apparently watching the train that had passed, he was struck by another train, coming from another direction,—a case not dissimilar in principle from the one at bar.

"It is frequently stated that, when the facts are undisputed or conclusively proved, the question of negligence is to be decided by the court. A better opinion, however, would seem to be that, in order to justify the withdrawal of the case from the jury, the facts of the case should not only be undisputed, but the conclusion to be drawn from those facts indisputable. Whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be left to the jury." 2 Thompson, Negligence, p. 1236.

And as showing the impropriety of judges taking this question from the jury, except in cases showing undisputed and palpable negligence, it is said by Mr. Cooley, in his work on Torts (p. 802):

"If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training and temperament of the judge himself; a rule which his predecessor might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently

regarded, but because judges are men and men are different. As has been said in one case, it must be a very clear case, indeed, which would justify the court in taking upon itself this responsibility. For when the judge decides that a want of due care is or is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the conduct of the party by that, turns the case out of court or otherwise disposes of it upon his opinion of what a reasonably prudent man ought to have done under the circumstances."

This court, in *McQuillan v. Seattle,* 10 Wash. 464 (38 Pac. 1119, 45 Am. St. Rep. 799), in a case where *prima facie* it would seem that as much negligence had been exercised as in the case at bar, decided that the question of contributory negligence is for the jury to determine from all the facts and circumstances of a particular case, and that it is only in rare cases that the court would be justified in withdrawing it from the jury. This, too, was in a case where the court below had granted a motion for a nonsuit, and we laid down the rule, as indicated by the authorities above cited, that, if different results might be honestly reached by different minds, then negligence is not a question of law, but one of fact for the jury.

Another circumstance in this case, which does not appear in any of the cases cited by the appellant to sustain the contention that the action of the plaintiff proved negligence *per se,* is the question of age. The plaintiff in this case was a boy fourteen years old. The relative liability, so far as negligence is concerned, of children and adults, was discussed at large in the case of *Roth v. Union Depot Co., supra,* and what was said there might apply with equal force in this case. It is true that in that case the boy injured was only nine years old, and in this case he is fourteen; but a boy fourteen years old is a boy still, and while he might be held to a greater degree of care and prudence, and doubtless would be, than a boy nine years

old, yet it would certainly be barbarous, and to a degree inhuman, for the court to hold a heedless, thoughtless fourteen year old boy to as high a degree of circumspection as it would an adult, whose judgment and caution had been cultivated and matured by years of observation and experience. This is a circumstance to be viewed by the jury, and to be given such weight as the jury, under the circumstances, think it is entitled to. We do not think that the court could have said that contributory negligence was established as a matter of law, and no error was committed in refusing to take the case from the jury.

The following instruction is assigned as error by the appellant:

" I further charge you that it is an established rule of law that one person will not be allowed to impute a want of vigilance to another injured by his act if that very want of vigilance were the consequence of an omission of duty on his part; that is, if the defendant, by his own act, throws a plaintiff off his guard, the plaintiff's lack of vigilance cannot be regarded as negligence, and one is not chargeable with contributory negligence in failing to anticipate the negligence of another, and in not providing against it. Every one has a right to presume that others will act in a lawful and proper manner; consequently the law will not hold it imprudent in a plaintiff to act upon a presumption that the defendant has done or will do his duty."

This instruction, we think, was in accordance with good law and good morals, and could rightfully be applied to the ordinary business transactions of life.

The second instruction objected to is as follows:

" I instruct you that the plaintiff, Harry Steele, need not affirmatively prove that he stopped, looked, and listened. The presumption is that he did so, and the burden of proof that he did not stop, look, and listen is on the defendant railway company, and must be proved by a preponderance of the testimony on its part."

The settled law of this state is to the effect that contributory negligence is a defense. But it is contended by the appellant that, where the facts are developed by the plaintiff himself which show contributory negligence, the defendant is entitled to avail itself of such facts, and consequently no presumption arises. We have just indicated that the facts developed by the plaintiff did not show contributory negligence, and therefore the criticism of the appellant is not warranted, so far as this instruction is concerned.

The court further instructed the jury as follows:

" I instruct you that the law does not require the eyes and ears of Harry Steele to be infallible."

This, taken with the whole instruction that was given, we do not think was a comment upon the evidence, or was prejudicial in any way to appellant's interests. The questions of fact in this case having been decided against the appellant by a competent tribunal, under proper instructions by the court, the judgment will be affirmed.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.