## St. Louis, Iron Mountain & Southern Railway Company

### *v.* Loyd.

### Opinion delivered November 4, 1912.

1. CARRIERS—CARE-TAKER OF LIVE STOCK AS PASSENGER.—A care-taker in charge of a shipment of live stock is a passenger, though according to defendant's custom he rides free.  (Page 344.)

2. SAME—INJURY TO PASSENGER—PRESUMPTION.—Proof that plaintiff was injured by the fall of a brace rod, while riding as a passenger in a box car, makes a *prima facie* case of negligence against the railway company.  (Page 344.)

3. SAME—INJURY TO PASSENGER—QUESTION FOR JURY.—Where, in an action by a care-taker for injuries received in being struck by a falling brace while he was riding in a box car in charge of a shipment

of live stock, there was evidence of a general custom for care-takers to ride in box cars, and that the conductor knew and assented to plaintiff so riding, it was a question for the jury whether plaintiff was negligent, though there was evidence that it was against the carrier's rules for a passenger to ride in a box car with live stock.    (Page 345.)

4.   SAME—LIABILITY FOR PASSENGER'S INJURIES—INSTRUCTIONS.— It was error, in an action by a care-taker for injuries received while riding as a passenger in a box car with live stock, to instruct that the carrier was liable if the conductor acquiesced in plaintiff's riding in the box car, as such instruction ignored the issue as to whether plaintiff was guilty of contributory negligence.    (Page 346.)

Appeal from Greene Circuit Court; *W. J. Driver*, Judge; reversed.

STATEMENT BY THE COURT.

Appellee brought this suit against appellant to recover damages for personal injuries which he claims he suffered because of the negligence of appellant in transporting him as a passenger on one of its local freight trains.

His complaint alleges that he was riding in a box car caring for a milch cow, some poultry and a load of household goods, the property of J. W. Jameson, and that while the train was running an iron brace rod fell down from the top of said box car and injured him.   It also alleges that he was riding in said box car with the knowledge, permission and acquiescence of the conductor of said local freight train, and that when immigrant cars are being transported over appellant's line of railroad it is the custom for a care-taker to travel free in the car with the live stock to take care of the same.

The material facts adduced in evidence by appellee are as follows:   On August 25, 1911, J. W. Jameson shipped from Jelks, Arkansas, to Paragould, Arkansas, in a box car some household and kitchen furniture, a milch cow and a coop of poultry and paid the freight charges on the same.   A bill of lading for the shipment was issued to him by appellant's agent at Jelks.   It did not provide transportation for any person with the goods, and no additional ticket or transportation was issued for any person to ride.   The goods were loaded into the car at Fakes, a blind station near Jelks, on the evening of August 25, 1911, and appellee remained in the car all night.   The next morning he rode in the car from Fakes to Wynne.   There the car had to be transferred from

the Bald Knob branch of appellant's railroad to the Helena branch in order to be carried to destination. The car was switched from the train in which it came to Wynne to the yards, and remained in the yards for several hours. Appellee went to the yardmaster and told him that he wanted his car set out in order that it might be carried to destination. The yardmaster told him that he would send the car out on the local freight that evening. The conductor of the local freight was present at the time the conversation was had. The car was placed in the local freight, and appellee continued to ride in it. He kept the door partly open. While appellee was in the car in the yards at Wynne, the conductor and one Homer Moore came by, and appellee spoke to Moore. He got hurt that evening somewhere south of Nettleton before he arrived at his destination. The accident happened in this way: There was a big iron rod which runs lengthwise the car, and it broke loose at one end and struck appellee on the shoulder as it fell. When the train stopped at Nettleton, the conductor came along and asked appellee what was the matter with him. He told the conductor that the rod in the car fell and injured him severely. The conductor then told him that he had better get out of the car and go back to the caboose. Appellee says that he looked at the car when he went in it, and it looked to be a good solid car; that he did not notice that the rod was loose. The rod fell because the tap which fastened it up was gone. The rod was about an inch and a quarter in diameter and about thirty-five feet long. The extent and character of appellee's injuries were detailed in evidence.

The bill of lading contained no provision permitting any person to ride in the car with the goods, and no provision permitting any person to ride on the train with the goods without paying fare, but, according to the testimony adduced by appellee, it was shown that where a person ships a car of goods which contains any live stock it was the general custon for one man to go in charge of the car to take care of the stock, and for that purpose to ride in it.

Appellant adduced testimony tending to show that its rules required persons accompanying live stock to ride in the caboose, and that there was no such custom as attempted

to be proved by appellee; that it was against appellant's
rules for any person to ride in a box car with stock.

The conductor testified that he did not know that appellee
was in the box car until after he was hurt, and that he told
him to get out and go back in the caboose as soon as he dis-
covered him in the box car.

It was admitted by appe'lant that it was the general
custom for persons shipping a car of goods containing any
live stock to have a care-taker ride free to take care of the stock,
but that the rules and regulations of the company required
such person to ride in the caboose.

Other facts will be referred to in the opinion.

The jury returned a verdict for appellee, and fixed his
damages at $400.- The case is here on appeal.

*E. B. Kinsworthy, S. D. Campbell, W. G. Riddick* and
*R. E. Wiley,* for appellant.

1. The court should have directed a verdict for appel-
lant. The record shows appel ee was hurt in a car not pre-
pared nor intended for carriage of passengers, and that he would
not have been injured if he had been in the car provided for
passengers. Appellant owed him no duty as a passenger,
and, the injury not having been inflicted wilfully or wantonly,
it is not liable. 40 Ark. 298; 52 Am. St. Rep. 444; 61 Am.
St. Rep. 80, 81, note; 76 Ark. 106; 97 Ark. 137; 96 Ark. 568.

It being undisputed that appellant's rules forbade pas-
sengers being carried otherwise than in the caboose, even
if the conductor knew that appellee was riding in the stock
car, that did not create the relation of carrier and passenger
between appellant and appellee. 64 Tex. 144, 146; 76 Tex.
174; 92 Pa. St. 21, 37 Am. Rep. 651; 8 Kan. 505, 12 Am. Rep.
475; 55 Tex. 88; 14 Allen (Mass.) 431; 67 Fed. 523; 165 Fed.
403; 18 Col. 477, 484; 97 Ala. 316, 323; 19 Am St. Rep. 585;
96 Pa. St. 256; Wharton on Neg., § 354; Patterson's Railway
Accident Law, § 214.

That a custom will n some circumstances excuse the vio-
lation of a rule is conceded; but there is a total failure in this
case to prove the ex'stence of such a custom. See 96 Ark.
558, 564; 59 Ark. 395.

2. Instruction 2 given by the court is erroneous in that

it fails to submit to the jury the question of appellant's negligence or of appellee's contributory negligence, and in making appellee's right to recover depend solely upon the conductor's seeing and acquiescing in appellee's riding in the stock car, and failing to warn him.   70 Ark. 481; 67 Ark. 54, 55.

*W. W. Bandy*, for appellee.

1.   The evidence is sufficient to show that appellee was a passenger when he was injured, and was so received.   Kirby's Dig., § 6705.

2.   The injury was the result of the operation of the train, and was inflicted under such circumstances as to raise the presumption of negligence against the appellant.   63 Ark. 636.

3.   The defense of contributory negligence will not bar recovery under the proof in this case.   40 Ark. 298; 93 U. S. 291; 29 Pac. 845; 38 La. Ann. 111; 61 Hun. 623; 16 N. Y. S. 62; 37 Ark. 519; 112 S. W. 291; 20 Minn. 125; 58 Me. 187; 86 Pa. St. 139; 11 S. E. 553; 11 S. W. 751; 46 Ark. 528; Wharton on Neg., c 364.

HART, J., (after stating the facts).   It is contended by counsel for appellant that the court erred in refusing to take the case from the jury.   We do not think so, but are of the opinion that under the facts and circumstances of this case it was proper to submit to the jury the question of appellant's negligence and appellee's contributory negligence.   The train upon which appellee was injured was a local freight train, and was required to carry both freight and passengers. Kirby's Dig., § 6705.

Appellee adduced testimony tending to show that where a person shipped a car containing live stock over appellant's road it was the custom for appellant to permit a care-taker in charge of the live stock to ride free, and this much is conceded by appellant.   Therefore, appellee was a passenger, notwithstanding he rode free.   *Little Rock & Fort Smith Ry. Co.* v. *Miles*, 40 Ark. 298.

Appellee says that he was injured by a brace rod in the box car falling on him while he was riding in the car in charge of the stock.   The rod fell because the tap which held it in position had come off.   This was an injury caused by the run-

ning of a train, and made a *prima facie* case of negligence against the railway company. *St. Louis, I. M. & S. Ry. Co. v. Neely,* 63 Ark. 636.

At the same time it was the duty of appellee to use reasonable care in protecting himself, and we consider the question of his contributory negligence the most serious one in the case. It is true that, according to the testimony of appellant, it was against its rules and regulations for a care-taker to ride in the car with the live stock, and the conductor says that he had no knowledge that appellee was riding there until after the injury was received; that he told him to ride in the caboose and supposed he was riding there. On the other hand, the jury might well have inferred from the testimony of appellee that the conductor saw him riding in the car with the live stock, and made no objections thereto; in other words, that appellee rode there with the knowledge and acquiescence of the conductor. Additional testimony was adduced by appellee tending to show that it was the general custom of persons in charge of live stock shipped upon one of appellant's trains to ride in the car with the live stock in order to take care of it. Appellee also says that when he took his place in the car he looked around in it, and it appeared to be a solid and substantial car. Looking at the matter from appellee's standpoint, we think that he was justified in believing that the conductor's action in permitting him to ride in the car with the live stock was equivalent to the act of assigning him to that place. If the place was one of hidden peril, since he was a passenger and could not be reasonably expected to know of such danger, the duty devolved upon the conductor to warn him that he was riding at a place on the train which was contrary to the rules of the company, and which would subject him to unusual risks. *Lake Shore & Michigan S. W. Ry. Co. v. Teeters,* (Ind.) 77 N. E. 599, 5 L. R. A. (N. S.) 425; *New Orleans & N. E. R. Co. v. Thomas,* 60 Fed. 379, 9 C. C. A. 29.

Hence we do not think that, under all of the facts and circumstances in this case, the court erred in refusing to declare as a matter of law that appellee was guilty of contributory negligence. It must be admitted that there is some conflict in the authorities upon this point, but after a consideration of the question we believe that the conclusion we have reached

is in accord with the better reasoning and with the trend of our authorities on the subject. *Little Rock & Fort Smith Ry. Co.* v. *Miles, supra; St. Louis & S. F. Rd. Co.* v. *Kitchen,* 98 Ark. 507.

It is next contended by counsel for appellant that the court erred in giving the following instruction to the jury:

"2. You are instructed that the duty of a conductor of a local train carrying passengers is to look after the safety and protection of all passengers on his train for the purpose of being conveyed from one point to another on the line of railroad over which his jurisdiction extends, and to assign them seats; and if he finds or sees a passenger in an exposed position, it is his duty to warn him of the danger to which he is exposed; and if you find in this case that the conductor of the local freight train on which plaintiff was injured saw plaintiff in the box car, and knew that he was travelling in said car, regardless of the fact whether said train was in motion or still, and failed to warn him of his danger, or permitted plaintiff to ride in said car, or acquiesced in his doing so, and plaintiff was injured thereby, your verdict will be for the plaintiff."

We agree with counsel in this contention. The instruction in effect excludes from the jury the question of appellee's contributory negligence, and makes the company liable in damages for the injuries if the conductor acquiesced in his riding in the car with the live stock and failed to warn him of his danger. While the railroad company owed him the duty to employ reasonable means and to exercise ordinary care to avoid injuring him, it was nevertheless his duty to use reasonable care in protecting himself; and, if the position he took in the train was one of such obvious danger that a person of ordinary prudence would not ride there, appellee assumed the risk of doing, so, and can not recover against appellant merely because the conductor failed to warn him of his danger. As we have already seen, the question of appellee's contributory negligence was one for the jury, and because the instruction under consideration practically excludes that question from the jury it was prejudicial to the rights of appellant.

. Other errors are pressed upon us for the reversal of the judgment, but we think the principles of law already announced

practically cover the other assignments of error, and will be a sufficient guide for a retrial of the case.

For the error in giving instruction numbered 2, as indicated in the opinion, the judgment will be reversed and the cause remanded for a new trial.