[Civil No. 1734.  Filed December 23, 1919.]

[185 Pac. 938.]

# MORENCI SOUTHERN RAILWAY COMPANY, a Corporation, Appellant, v. N. J. MONSOUR, Appellee.

1. APPEAL AND ERROR—ERROR IN INSTRUCTION HARMLESS AS NOT MIS-LEADING.—An instruction defining negligence, while not strictly correct, *held* not prejudicial, there being little doubt but that the jury understood what was intended to be said, and was not misled.

2. RAILROADS—CROSSING SIGNAL NEED NOT BE CONTINUOUS.—An instruction is not good under Civil Code of 1913, paragraph 2164, requiring a locomotive to have a bell of a certain weight which shall be rung at a distance of not less than eighty rods from a crossing, where the instruction also requires it to be kept ringing till the crossing is passed.

3. RAILROADS—INSTRUCTION AS TO COMMON-LAW CROSSING SIGNAL.—An instruction, declaring railroad company negligent if the locomotive bell was not rung at least eighty rods from the crossing and continually till the crossing was passed, is erroneous as a common-law instruction; there being evidence of whistling, which might be found sufficient.

4. RAILROADS—STATUTORY CROSSING SIGNALS MINIMUM OF DUTY.—The signal of approach of a train prescribed by Civil Code of 1913, paragraph 2164, ringing a bell at least eighty rods from a crossing, is not the extent, but merely the minimum, of duty of the railroad company as to warning.

5. TRIAL—INSTRUCTION IGNORING DEFENSE.—Instruction in crossing accident case, stating that, if the railroad company by compliance with its duty of constant lookout could have discovered plaintiff's auto in time to avoid the accident, verdict should be for plaintiff, is bad in ignoring the defense of contributory negligence, pleaded and supported by evidence.

6. RAILROADS—DUTY TO LOOK AND LISTEN AT CROSSING NOTWITHSTANDING OBSTRUCTIONS AND NOISE.—The obstructions to view

---

3. On violation of rule as to giving of signals as evidence of negligence toward member of public, see notes in 8 **L. R. A.** (**N. S.**) 1063; **L. R. A.** 1917C, 801.

4. Failure of railroad to give statutory signals on approaching crossing as excuse for traveler's contributory negligence, note, 6 **Ann. Cas.** 78.

6. On duty to stop, look and listen before crossing railroad track, see note in 17 **L. R. A.** (**N. S.**) 505.

being only partial and noises only lessening the chances of hearing, a traveler on the highway approaching a railroad crossing is not free from contributory negligence where he does not look or listen for an approaching train.

7. RAILROADS—DUTY OF AUTO DRIVER AT CROSSING.—The duty of a driver of an automobile approaching a railroad crossing to look and listen is at least as imperative as that of a pedestrian or teamster.

8. RAILROADS—PRESUMPTION AS TO LOOKING AT CROSSING.—Where the driver of an automobile struck by a train at a crossing could have seen by looking, the presumption is not that he looked, but the contrary.

9. TRIAL—ABSTRACT INSTRUCTION.—There being no evidence that plaintiff was thrown off his guard by any act or omission of defendant, instruction in crossing accident case that if there was lack of vigilance on the part of the plaintiff due to an omission of duty by defendant, or if plaintiff was thrown off his guard by defendant, the plaintiff's lack of vigilance could not be regarded as negligence, was inapplicable to the facts.

10. TRIAL—INSTRUCTION OUTSIDE ISSUES.—Instruction as to wilful and reckless negligence was outside the issues; there being no pleading or proof of any such negligence.

11. TRIAL—NECESSITY OF INSTRUCTION ON CONTRIBUTORY NEGLIGENCE.— Contributory negligence being practically the only defense, and having substantial support in the evidence, defendant's tendered instruction defining it, and correctly stating the law, should have been given.

APPEAL from a judgment of the Superior Court of the County of Greenlee.   F. B. Laine, Judge. Reversed and remanded, with instructions to grant new trial.

Messrs. Ellinwood & Ross, Mr. Clifton Mathews and Messrs. Stratton & Lynch, for Appellant.

Mr. L. Kearney, for Appellee.

ROSS, J.—The plaintiff-appellee was the owner and operator of a public service automobile carrying

---

7. Accidents to automobiles at railroad crossings, notes **Ann. Cas.** 1913B, 680; **Ann. Cas.** 1915B, 767.

7. Generally as to care required of driver of automobile at railroad crossings, see notes in 21 **L. R. A.** (N. S.) 794; 29 **L. R. A.** (N. S.) 924, and 46 **L. R. A.** (N. S.) 702.

passengers for hire between the towns of Morenci and Clifton in Greenlee county, this state. About 4:30 in the afternoon of August 28, 1918, while attempting to cross the railroad track of defendant-appellant, at a public crossing in the town of Morenci, the automobile was run into by one of defendant's engines, and almost completely destroyed. The crossing where the accident happened is not in the most populous portion of Morenci, but is in the vicinity of appellant's roundhouse, the machine-shops of Phelps-Dodge Company, and a garage, and is much used by the general public. The crossing is in a canyon, and is considerably lower than the surrounding country. At the time of the accident, plaintiff was approaching the crossing on a descending grade and defendant on an ascending grade. By actual measurements, the plaintiff's automobile, in approaching crossing 150 feet away, was ten and nine-tenths feet higher, 100 feet away, six feet higher, and fifty feet away, two and three-tenths feet higher than the elevation at the crossing. The railroad track approaches the crossing through a cut on an ascending grade of two and one-half per cent. The approach is at a considerable curve in the track, but the crossing is at right angles. The elevation on the highway was such that one looking down at the crossing and the track in the direction from which the engine was coming could, at the fifty-foot point, according to actual observation and measurement, observe the railroad track for a distance of 180 feet from the crossing, and at points intervening between the fifty-foot point and the track a like view of the track could be had. Some walls of masonry and a residence building are mentioned as obstructions to the view. There was some evidence tending to show that the confusion of noises from machinery and roundhouses located adjacent to the crossing made it difficult to locate and distinguish sounds.

Plaintiff was perfectly familiar with the crossing and surroundings and conditions thereof, having averaged six trips a day over it for four years as a driver of a public service car. The crossing was regarded as a dangerous one.

The grounds of negligence charged in the complaint against defendant are as follows:

(2) In negligently failing and omitting to keep an outlook for automobiles passing over said crossing.

(3) In negligently omitting and failing to reduce the speed of the locomotive to a rate of not exceeding six miles an hour when approaching said crossing, it being dangerous to exceed that rate at said crossing, when in fact it was negligently running at the time of the accident at a rate of about thirty miles per hour.

(4) In negligently omitting and failing to keep its said locomotive under proper control so that it could have been stopped in time to have avoided said collision.

(5) In negligently omitting and failing to ring its bell at a distance of not less than eighty rods from said crossing, and to keep the same ringing until past said crossing.

(6) In negligently omitting and failing to maintain a watchman or other automatic signal, or other appliance to warn travelers of the approach of its locomotives and cars at said crossing at the time of the collision and accident.

The defendant set up in its answer that the injury and damage claimed were caused solely by the negligence of plaintiff in not keeping his automobile in control, in operating it at an excessive and dangerous rate of speed, and in wholly failing to stop or look or listen for the approach of defendant's engine.

The defendant also pleaded contributory negligence, assigning as grounds thereof the same acts of negligence as above set forth in its first ground of defense. From a verdict and judgment in favor

of plaintiff, defendant appeals, assigning errors based upon seven instructions given and one refused. The testimony upon the different issues of fact was sharply in conflict; and, the jury having found thereon in favor of plaintiff, the defendant does not contest or dispute the correctness of the verdict, providing the court correctly informed the jury as to the law applicable to the facts.

We will consider these instructions in the order of their assignment.

The court defined negligence as follows:

"In a general sense, negligence is the absence of ordinary care, or negligence may be otherwise defined as doing something which under existing circumstances and conditions a person of ordinary care and prudence would not do, or, on the other hand, omitting to do something which, under the existing circumstances and conditions, a person of ordinary care and prudence would have done."

In *Railroad Co.* v. *Jones,* 95 U. S. 439–441, 24 L. Ed. 506 (see also, Rose's U. S. Notes), negligence is defined as follows:

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission."

Tested by this definition of negligence, we think the instruction given, and to which exception is taken, is erroneous. Literally, it defines caution or care of a prudent person, and pronounces it negligence. The omission to do something that a prudent person would not have done under the existing conditions ordinarily would be commended as most proper. But when the expression is viewed broadly and sympathetically, it is difficult, if not unreasonable, to believe that the jury misunderstood what was intended to be stated by the court, or that it

was misled by the loose and inapt language used. Positive, active negligence was properly defined, using as a standard what a prudent person would have done under the circumstances. Negative, or negligence arising from failure to do some duty imposed by law is measured by the same standard. The one is a fault by omission and the other by commission, and we little doubt the jury so understood. If the expression is read, "Negligence is, . . . on the other hand, omitting to do something which under the existing circumstances and conditions a person of ordinary care and prudence would not have omitted to do," we have but a slight variance from the text, or if the word "not" in the last line of the instruction is dropped, negligence by omission is fairly defined. We conclude, while this instruction was not strictly correct, that defendant was hardly prejudiced thereby.

The next instruction is based upon paragraph 2164, Civil Code, and is in these words:

"The court instructs the jury that all locomotives must be provided with a twenty-pound weight bell, which must be rung at least a distance of eighty rods from the crossing of any street, road, or highway, and the bell must be kept ringing until the crossing is passed or the locomotive stopped and that a failure to do this is negligence; so, in this case, if you believe from the evidence that the defendant was negligent in this regard, and that such negligence was the proximate cause of the injury, and that the plaintiff exercised ordinary care for his own safety, your verdict should be for the plaintiff."

The statute is that each locomotive must have a bell of at least twenty-pounds weight, which shall be rung at a distance of not less than eighty rods from the crossing of any public street, road or highway, and the railroad is made liable for all damages any person may sustain by reason of a noncompliance with this requirement.

The above instruction is not good as a statutory instruction, because it goes beyond the terms of the statute, and is more onerous than the statute prescribes. *Texas etc. Ry. Co.* v. *Scrivener,* 49 S. W. 649; *St. Louis etc. Ry. Co.* v. *Rawley,* 90 Ill. App. 653; *Edwards* v. *Atlantic Coast Line Ry. Co.,* 132 N.. C. 99, 43 S. E. 585.

It is not correct as a common-law instruction because it fails to recognize that other signals, such as the blowing of the whistle, may be employed with equal effectiveness to warn or inform persons to be on the lookout. The crossing admittedly being a dangerous one, the duty of the company under the common law doubtless was not only to ring the bell at eighty rods or earlier, and to keep it ringing continuously until the crossing was reached or crossed, but also to sound the whistle at frequent intervals. Now, the testimony of the defendant's witnesses was to the effect that both of these things were done. They say the bell was rung at eighty rods and continuously until the engine collided with the automobile; also that the whistle was sounded at 1,100 feet and 250 feet from the crossing, the last time with two long and two short blasts. The effort to signal the engine's approach by sounding the whistle was completely ignored in the instruction. At common law, the duty is to adequately warn, not in any particular way, but by any means that are effective. It might be by watchman or automatic signals, or by whistling or by ringing a bell, or by all of these combined, but when the evidence shows that two or more of these were actually employed in a given instance, as here, an instruction that, if the jury find that one of these was not employed, the defendant is guilty of negligence *per se* is erroneous because the jury might be satisfied that the signal ignored in the instruction was not only given, but was sufficient warning to. all persons

exercising due care. The instructions should have been hypothesized upon all of the signals of which there was substantial evidence, because, as we have said, the duty at common law to warn is not confined to the ringing of a ' bell.

The statutory signals at public crossings are not prescribed for the purpose or with the idea of relieving the railroad from using other means of warning where available or necessary. They are merely the minimum of duty to warn. (*Kinyon* v. *Chicago & N. W. Ry. Co.*, 118 Iowa, 349, 96 Am. St. Rep. 382, 92 N. W. 40); and, because they are such and made so by written law, a neglect to give them is negligence *per se*, and if by reason of a noncompliance with them a person suffers damage, he may recover if at the time he is exercising ordinary care. As the statute (paragraph 2164, Civ. Code) makes the failure to ring the bell at eighty rods from any crossing negligence, and does not require a continual ringing until the crossing is passed or engine stopped, as stated in the instruction, the court incorrectly defined statutory negligence, and, as we have already seen, the instruction was erroneous under the common law, taking, as it does, from the consideration of the jury the warnings testified to by the sounding of the whistle.

In instruction No. 3, the jury were advised of the company's duty to keep a constant lookout for persons at the crossing, and that, if by so doing the plaintiff's automobile would have been discovered in time to avoid the accident, the verdict should be for the plaintiff. . This instruction ignored the defense of contributory negligence. It is well settled that, before a recovery can be had in this kind of action, the plaintiff himself must be free from negligence, or must not have contributed to his own injury, and that it is error, where the defense of contributory negligence is pleaded and supported by

evidence, to give instructions without the qualification that plaintiff must have been in the exercise of ordinary care before he is entitled to recover. *Alabama G. S. R. Co.* v. *Smith,* 178 Ala. 613, 59 South. 464; *St. Louis, I. M. & S. Ry. Co.* v. *Loyd,* 105 Ark. 340, 150 S. W. 864; *Quackenbush* v. *Los Angeles Ry. Corp.,* 28 Cal. App. 173, 151 Pac. 755; *Chicago, R. I. & P. Ry. Co.* v. *Clark,* 46 Okl. 382, 148 Pac. 998.

On the question of the duty of the plaintiff to stop, look and listen before attempting to make the crossing, the court instructed the jury, in part, as follows:

"A traveler is not in all cases necessarily guilty of contributory negligence in failing to look and listen before crossing a railroad track because there may be modifying circumstances excusing him from so doing. The traveler may not be in fault in failing to look and listen, if misled without his fault, as where the view may be obstructed by objects, and other loud noises may interfere with his hearing. These are questions for your determination."

We think the unquestioned facts and circumstances of this case did not exempt the plaintiff from looking and listening. While his view of the railroad track in the direction from which the defendant's engine was approaching was somewhat obscured, yet at places upon the highway upon which he was traveling it is uncontroverted that by looking he must have seen the track for at least 180 feet. By actual survey and observation, one such point on the highway was about fifty feet from the crossing. His own witnesses placed the distance at from fifteen to thirty feet. He knew, or should have known, that by looking he could obtain a view of defendant's track, and he also knew that it was a dangerous crossing, having, by his own statement, crossed it hundreds of times in the last four years. In another part of the instruction, the court properly

advised the jury, "It is the duty of a person approaching a railroad crossing to look and listen if he is in a position where looking and listening will avail him," and that seems to be the well-settled rule. If the conditions were such that he could not hear if he listened, or could not see even if he looked, to do either would be useless. 2 Shearman & Redfield, § 477. But where the obstructions are only partial, or the noises only lessened the chance of hearing, the duty to exercise these faculties still exists. It is said "a driver of an automobile is under the same, or a more imperative, duty to look and listen before crossing a railroad track" as the pedestrian or teamster (*Jacobs* v. *Atchison, T. & S. F. Ry. Co.*, 97 Kan. 247, Ann. Cas. 1918D, 384, L. R. A. 1916D, 783, 154 Pac. 1023), for the reason that in a collision between an automobile and a train the danger of wrecking the train is greater than in a collision between a train and a horse-drawn vehicle or pedestrian. *Brommer* v. *Pennsylvania Ry. Co.*, 179 Fed. 577, 29 L. R. A. (N. S.) 924, 103 C. C. A. 135.

Shearman & Redfield, volume 2, section 476, make the statement that "it is a rule of almost invariable application that a traveler," before attempting to cross a railroad track, must look and listen for approaching trains, and in section 478 it is said that, if there are obstructions, travelers seeing them are bound on their part to use additional precautions for the purpose of ascertaining whether a train is approaching. *Chicago, R. I. & P. Ry. Co.* v. *Crisman*, 19 Colo. 30, 34 Pac. 286; *Pogue* v. *Great Northern Ry. Co.*, 127 Minn. 79, 148 N. W. 889.

In the next instruction excepted to, the jury were told:

"I instruct you that the plaintiff need not prove affirmatively that he looked and listened before crossing the track. The presumption is that he did so,

and the burden of proof that he did not look and listen is upon the defendant railway company, and must be proved by the preponderance of the testimony on its part.''

In the statement of facts in connection with the next preceding instruction it appears that the plaintiff, by looking at points thirty and fifty feet from the crossing, could have seen an approaching engine or train on defendant's track. Witness Hagan, testifying for plaintiff, said:

''When you are driving a car down that road and reach a point where the driver is about thirty feet from the track, you can see clear down the railroad track. If you stopped your car at that point, you could ascertain whether it was safe to go on or not.''

In view of the fact that plaintiff could have seen by looking, should he have the benefit of a presumption that he did look? It seems that a more rational presumption would be that he did not look, as, if he had looked and seen the approaching engine when he was fifty or thirty feet from the crossing, instinctively his endeavor would have been to stop his car and avert the accident. The plaintiff says his car was about six feet from the track and the engine was about twenty feet from the crossing when he first saw it. Presumptions should not be indulged in to overcome proven or palpable facts, but rather to supply what cannot be proven, but in the nature of things must have existed. The converse of the proposition stated in the instruction, under the facts in this case, is the correct rule. We quote from *Herbert* v. *Southern Pacific Ry. Co.,* 121 Cal. 227, 53 Pac. 651, and the rule there stated seems to be the one of universal application:

''The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for approaching trains. What he

must do in such a case will depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions."

Plaintiff says this instruction was approved in *Steele* v. *Northern Pac. Ry. Co.*, 21 Wash. 287, 57 Pac. 820. The facts in that case were not the same as the facts in this case, further than that it was a railroad crossing accident. In that case Steele, who was a minor, was in the act of crossing the defendant's railroad track, and, while attempting to avoid an engine on one track, he stepped on to another track, where he was struck by some cars that had been detached from the engine. At the time he was struck, he was watching the engine, and, having no warning that the cars had been separated from the engine, he neglected to look for them on another track from the one the engine was moving on, and therefore failed to see the detached cars until he was struck. The court held that under the existing conditions the boy was not guilty of contributory negligence in failing to see the detached cars—a very different situation from the one here. In the Steele case, the injured party was evidently led to believe that his safety required him to keep an outlook for the engine from which, without his knowing it, the cars that ran him down were detached. His vision followed the only danger that his youthful mind told him to be present. He was thrown off his guard. That the Washington court did not intend the instruction in the Steele case as a statement of a principle or rule applicable to every case growing out of accidents at railroad crossings is apparent from its holding in *Woolf* v. *Wash. Ry. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997, wherein it was decided that the

duty to look and listen before going on to a railroad track was imperative, unless it be apparent that looking and listening would avail nothing.

Instruction No. 6 is subject to criticism, in that it was inapplicable to the facts of the case. It advised the jury that if there was lack of vigilance on the part of plaintiff due to an omission of duty by defendant, or if plaintiff was thrown off of his guard by defendant, the plaintiff's want of vigilance could not be regarded as negligence. Under a proper state of facts, the proposition of law is undoubtedly good. There is, however, no evidence in this case that plaintiff was thrown off of his guard by any act or omission of defendant.

The court instructed the jury upon wilful and reckless negligence. There was no charge in the complaint of that kind of negligence; neither was there any proof of any such negligence. The instruction, like the preceding one, was outside of the issues, and should not have been given. *Denman* v. *Johnston*, 85 Mich. 387, 48 N. W. 565.

Finally, the defendant complains because the court refused an instruction offered by it defining contributory negligence. That was practically the only defense made by the defendant, and we think we have stated enough of the facts developed at the trial to show that there was substantial evidence to support this defense. In such case, it was the duty of the court to instruct the jury as requested. The tendered instruction was a correct statement of the law, and should have been given.

We think the defendant was entitled to a new trial, and that the court erred in overruling its motion. The judgment is therefore reversed and the cause remanded, with directions that the new trial be granted.

CUNNINGHAM, C. J., and BAKER, J., concur.